UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division



FILED

AUG 23 2013

CLERK, US DISTRICT COURT
NORFOLK, VA

COMM 2006-C8 COVESIDE LANE, LLC,

                        Plaintiff,

v.                                             Civil Action No. 2:12cv373

EMPIRIAN CHESAPEAKE, LLC, and
EZRA BEYMAN,

                        Defendants.

ORDER

On July 10, 2012, Plaintiff Comm 2006-C8 Coveside Lane, LLC ("Coveside") brought this suit against Empirian Chesapeake, LLC ("Empirian Chesapeake") and against Ezra Beyman, the managing member and President of the Empire companies, including Empirian Chesapeake (Collectively, "Defendants"). Coveside claims that Defendants have failed to pay on a Promissory Note signed by Empirian Chesapeake and a Personal Guaranty signed by Mr. Beyman. Mr. Beyman claims that terms of the Personal Guaranty were modified subsequently by a letter that allegedly obligated LNR Partners, Inc. ("LNR"), Coveside's agent, to negotiate in good faith with Mr. Beyman before commencing foreclosure proceedings.

On July 9, 2013, Coveside filed a Motion for Summary Judgment with respect to these claims as they pertain to Mr. Beyman. ECF No. 24. For the reasons that follow, that motion is **GRANTED**. Coveside's request for a hearing on this motion is **DENIED**.

1

## I. FACTUAL BACKGROUND

In deciding a motion for summary judgment, the Court must determine "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court construes the facts in the light most favorable to the nonmovant. *See, e.g., Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011). The undisputed facts are as follows: on December 5, 2006, in connection with the purchase of real estate in Chesapeake, Virginia (the "Property"), Empirian Chesapeake made out a promissory note (the "Note") and deed of trust to Arbor Commercial Mortgage, LLC. ECF No. 9-1; ECF No. 25-2. On that date, Mr. Beyman agreed to guaranty the Note up to $13,500,000.00 of the principal in the event that certain default conditions occurred (the "Guaranty"). ECF No. 9-3; ECF No. 25-4. Coveside has produced an allonge that was attached to the Note.[1] Coveside relies on the allonge to claim to be the current holder of the Note, the deed of trust, and the Guaranty. ECF No. 25-5.

Empirian Chesapeake missed two payments in late 2009. ECF No. 27 ¶ h at 4; ECF No. 25-1 at 26:5-6. On January 25, 2010, Coveside notified Empirian Chesapeake that it was in default under the Note and demanded payment by February 4, 2010. ECF 25-8. Empirian Chesapeake made partial payments subsequent to its default but failed to bring its account current. ECF No. 25 ¶ 16 at 5; ECF No. 25-1 at 50:21-51:14. On January 21, 2011, Coveside notified Mr. Beyman that a default under the Guaranty had occurred and demanded payment by January 30, 2011. ECF No. 9-5. Mr. Beyman made no payment.

Empirian Chesapeake and Mr. Beyman engaged in efforts to avoid foreclosure of the Property. ECF No. 27 at 2; ECF No. 25-1 at 51:15-17. At the same time, Plaintiff's agent and

---

[1] An allonge is a slip of paper attached to the original note for the purpose of documenting indorsements and transfers when there is insufficient space on the document itself. It is considered a part of the note. *See* BLACK'S LAW DICTIONARY (9th ed. 2009), *available at* Westlaw.

2

servicer, LNR, began the foreclosure process against a property in Texas owned by Mr. Beyman. ECF No. 27 ¶ j at 4. *See* ECF No. 27-1. In exchange for Mr. Beyman agreeing to forego his rights to pursue a temporary restraining order to prevent foreclosure on the Texas property, LNR promised to participate in good faith loan workout discussions with respect to Mr. Beyman's other properties, including the Chesapeake Property. ECF No. 27 ¶ k-l at 5. *See* ECF No. 27-1. Notably, however, LNR made no obligation to agree to the terms of any loan workout discussions. *Id.*

Empirian Chesapeake and Mr. Beyman presented several offers to LNR from potential buyers who were willing to purchase the Property, thereby avoiding foreclosure. ECF No. 27-2 at 34:17-19. One offer included an assumption of the $63,000,000 principal and payment of $1,000,000 above the mortgage. *Id.* at 38:19-20. All proposed offers were rejected by LNR. ECF No. 26 at ¶ 10; ECF 23-2 at ¶ 3-5. *See* ECF Nos. 27-28. The Property was sold at a foreclosure sale for $52,700,000 on April 11, 2011, leaving a deficiency of $28,804,097.65 on the Note. ECF No. 25-10 at 4. Coveside now moves for summary judgment against Mr. Beyman, seeking to recover under the terms of Mr. Beyman's Guaranty.

## II. STANDARD OF LAW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The mere existence of some alleged factual dispute between the parties "will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247–48 (1986). Furthermore, only disputes over facts that might affect the outcome of the suit under the

3

governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be considered by a court in its determination. *Id.* at 248.

After a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute of fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). At that point, the Court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. In doing so, the Court must construe the facts in the light most favorable to the non-moving party, and may not make credibility determinations or weigh the evidence. *Id.* at 255; *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 213 (4th Cir. 2007). However, a court need not adopt a version of events that is "blatantly contradicted by the record, so that no reasonable jury could believe it." *Scott v. Harris*, 550 U.S. 372, 380 (2007). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted). If there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party," the motion for summary judgment must be denied. *Id.* at 249.

### III. ANALYSIS

A. RECOVERY UNDER THE GUARANTY CONTRACT

Coveside alleges that it is entitled to recover under the terms of the Guaranty signed by Mr. Beyman. "Under Virginia law, a guaranty is an independent contract in which the guarantor agrees to assume responsibility for the debt in the event of the primary obligor's failure to pay." *Wells Fargo Bank, Nat. Ass'n v. Morton & Morton, LLC*, No. 3:10CV829, 2011 WL 1306479 at *2 (E.D. Va. Apr. 1, 2011) (citing *McDonald v. Nat'l Enters., Inc.*, 547 S.E.2d 204, 207 (Va.

4

2001)). To recover on a guaranty, the plaintiff must prove: (1) the existence and ownership of the guaranty contract; (2) the terms of the primary obligation; (3) default on the obligation by the primary debtor; and (4) nonpayment of the amount due from the guarantor under the terms of the guaranty contract. *McDonald*, 547 S.E.2d at 207.

In considering summary judgment of contractual disputes, "[o]nly an unambiguous writing justifies summary judgment without resort to extrinsic evidence . . . . The first step for a court asked to grant summary judgment based on a contract's interpretation is, therefore, whether, as a matter of law, the contract is ambiguous or unambiguous on its face." *World–Wide Rights Ltd. P'ship v. Combe Inc.*, 955 F.2d 242, 245 (4th Cir. 1992). If the court "determines that the contract is unambiguous on the dispositive issue, it may then properly interpret the contract as a matter of law and grant summary judgment because no interpretive facts are in genuine issue." *Id.*

The contract at issue here is the unconditional Guaranty. Coveside has produced a copy of the contract, signed by Mr. Beyman on December 5, 2006. Mr. Beyman does not dispute the authenticity of the contract.

There is no question that the Guaranty is unambiguous. The contract states that

> Guarantor (i) assumes liability for, (ii) guarantees payment to Lender of, (iii) agrees to pay, protect, defend, save harmless and indemnify Lender from and against . . . expenses of any kind whatsoever (including reasonable attorneys' . . . fees . . . ) which may at any time be imposed upon, incurred by or asserted against Lender solely as a result of the following "Indemnified Matters", except to the extent due to the gross negligence or willful misconduct of Lender.

ECF. No. 9-3 at ¶ 1. The Indemnified Matters under the Guaranty state clearly that

> Guarantor hereby unconditionally and irrevocably guarantees payment of the entire Debt if any of the following occurs after the date hereof: (i) a voluntary bankruptcy filing . . . against Borrower

5

> . . . or (ii) the Property becomes an asset in any voluntary bankruptcy proceeding.
>
> In addition, Beyman hereby unconditionally and irrevocably guarantees up to $13,500,00.00 of the principal balance of the Loan until such time as (i) no Event in Default is continuing hereunder or under any of the other Loan Documents, (ii) the occupancy rate of the Property is at least 90%, as reasonably determined by Lender, and (iii) the Debt Service Coverage Ratio at the Property . . . is at least 1.25 to 1.00 . . . .

ECF. No. 9-3 at ¶ 1(g) (hereinafter The Recourse Provision).

The contract identifies Empirian Chesapeake as the "Borrower," Mr. Beyman as the "Guarantor" and Arbor Commercial Mortgage LLC as "Lender." Coveside has also produced the allonge, detailing the indorsement and assignment of the payment of the loan to Coveside.[2] Mr. Beyman has raised no allegations that the contract is ambiguous. The Court finds the contract unambiguous as a matter of law.

In support of its motion for summary judgment, Coveside submitted a copy of the Note signed by Empirian Chesapeake, the Guaranty signed by Mr. Beyman setting forth $13,500,000 as the total amount guaranteed by Mr. Beyman, and an Account of Foreclosure setting forth $28,804,097.65 as the total amount owed on the Note. ECF No. 25-10 at 4. Moreover, in their depositions, Mr. Beyman and Mr. David Tieler, Director of Finance for Empirian Chesapeake's holding company Empire American Holdings, testified that the Debt Service Coverage Ratio requirement had not been met, thereby triggering the Recourse Provision of the Guaranty. ECF No. 25-11 at 23:8-25, 24:1-10. Further, the Occupancy Rate requirement had not been met since the last two months of 2009, when Empirian Chesapeake went into default. ECF No. 25-7.

---

[2] The allonge details an assignment of the Note by the original lender to the order of Deutsche Bank Mortgage Capital, LLC, by Deutsche Bank Mortgage Capital, LLC to the order of LaSalle Bank, N.A., as trustee for the registered holders of COMM 2006-C8 Commercial Mortgage Pass-Through Certificates, by LaSalle Bank, N.A., as Trustee, to the order of Wells Fargo Bank, N.A., as Trustee for the Registered Holders of COMM 2006-C8 Commercial Mortgage Pass-Through Certificates, and by Wells Fargo Bank, N.A., as Trustee to the order of Coveside. ECF No. 9 at ¶ 9; ECF No. 25 at 3-4.

Through these documents, and the statement of undisputed facts set forth in its memorandum in support of summary judgment, Coveside has established the existence and ownership of the guaranty contract, the terms of the primary obligation, the default on the obligation by Empirian Chesapeake, and nonpayment of the amount due from Mr. Beyman under the terms of the Guaranty. These documents and facts form the basis of Coveside's claim. In the face of Coveside's reliance upon these facts and evidence in its brief supporting its Motion, Mr. Beyman has offered no challenge.

B. FAILURE TO NEGOTIATE IN GOOD FAITH

However, Mr. Beyman raises a breach of contract defense claiming that a subsequent modification took place obligating LNR, Coveside's agent, to participate in good faith loan workout discussions with Empirian and Mr. Beyman. Mr. Beyman claims that Coveside and LNR breached their contractual obligations by refusing to negotiate in good faith before foreclosing on the Property. Under Virginia law, the elements of a breach of contract claim are (1) a legally enforceable obligation of one party to another; (2) one party's violation or breach of that obligation; and (3) injury or damage to the nonbreaching party caused by the breach of the obligation. *Ulloa v. QSP, Inc.*, 624 S.E.2d 43, 48 (Va. 2006); *Filak v. George*, 594 S.E.2d 610, 614 (Va. 2004).

The first inquiry the Court must make in determining a breach of contract claim is whether there was a legally enforceable obligation. For a contract to be enforceable, "there must be mutual assent of the contracting parties to terms reasonably certain under the circumstances." *Allen v. Aetna Cas. & Sur. Co.*, 281 S.E.2d 818, 820 (Va. 1981). Mere "agreements to agree in the future" can be "too vague and too indefinite to be enforced." *W.J. Schafer Assocs., Inc. v. Cordant, Inc.*, 493 S.E.2d 512, 515 (Va. 1997); *see also Beazer Homes Corp. v. VMIF/Anden*

7

*Southbridge Venture*, 235 F. Supp. 2d 485, 490 (E.D. Va. 2002) ("It is well settled under Virginia law that agreements to negotiate at some point in the future are unenforceable."). On the other hand, an enforceable contract exists "if it is clear that the parties intended to enter into a binding contractual relationship and the agreement contains sufficient objective criteria to enforce." *EG & G, Inc. v. Cube Corp.*, No. 178996, 2002 WL 31950215 at *7 (Va. Cir. Ct. Dec. 23, 2002) (footnote omitted).

In considering whether a document is an enforceable contract or merely an agreement to agree, the Court considers whether the document at issue includes the requisite essential terms, and also whether the conduct of the parties and the surrounding circumstances evince the parties' intent to enter into a contract. *Cyberlock Consulting, Inc. v. Info. Experts, Inc.*, 876 F. Supp. 2d 672, 678 (E.D. Va. 2012).

Mr. Beyman contends that LNR, as agent for Coveside, was contractually obligated to negotiate in good faith before exercising its right under the loan documents to foreclose on the Property. Mr. Beyman argues that LNR was bound by a letter (the "Letter Agreement") sent by LNR's Texas counsel to negotiate in good faith with regards to his "other properties" in exchange for his foregoing available legal options to oppose foreclosure of another property. ECF No. 27-1 at 2. Mr. Beyman further contends that LNR breached its contractual obligations under the Letter Agreement by refusing to accept offers to purchase the Property or to restructure Empirian Chesapeake's debt in ways that would have released Mr. Beyman from his personal Guaranty.

It is true that a promise to forebear enforcement of a legal right constitutes adequate consideration to support a contract. The crucial question is, however, whether the construed "promise" in the Letter Agreement is too vague and indefinite to enforce.

The Letter Agreement to which Mr. Beyman refers reads in relevant part:

> It is our understanding that your counsel filed a petition for temporary restraining order with the District Court . . . requesting that the foreclosure sale of the [Texas] Property be enjoined. It is our further understanding that you have agreed to withdraw such a request immediately, to allow the foreclosure sale to proceed as planned . . . . LNR . . . agrees to continue to participate in good faith in loan workout discussions with respect to other properties owned by Borrower's or Guarantor's affiliates that secure loans currently serviced by LNR, *without any obligations of LNR to agree to the terms of any such loan workout discussions* . . . .
>
> Nothing herein is intended as, is or shall constitute or be construed as . . . (iii) a waiver of any rights or remedies that Lender may have under the Loan Documents, at law or in equity.

ECF No. 27-1 at 2 (emphasis added).

The Letter Agreement fails to reflect an unambiguous intent to be bound to the terms set forth thereunder. In fact, the terms of the Letter Agreement state expressly that LNR will have no obligation to agree to any terms of any loan workout discussions. These terms establish that the parties did not intend (1) this letter to constitute a waiver of Coveside's or LNR's rights, (2) to be bound to any subsequent negotiation discussions, or (3) to compel themselves to enter into a subsequent binding contractual agreement. Accordingly, there was no mutual assent. Additionally, the Letter Agreement lacks sufficient objective criteria to enforce. Moreover, in his deposition, Mr. Beyman testified that he did not believe that the Letter Agreement ended his obligation under his personal Guaranty. ECF No. 25-11 at 49:3-16.

There is no evidence of an unambiguous intent to be bound to the alleged promise that Mr. Beyman construes from the Letter Agreement. To the contrary, the provision in the Letter Agreement in which the parties agreed to participate in good faith loan workout discussions amounts to nothing more than an agreement to negotiate in the future. This is unenforceable under Virginia law. *Beazer*, 235 F. Supp. 2d at 490-91.

9

Because the Letter Agreement is unenforceable as a matter of law, the Court need not reach the remaining elements of Mr. Beyman's breach of contract defense.

C. CONCLUSION

Coveside has established the existence and ownership of the Guaranty contract, the terms of the primary obligation, a default on the obligation by Empirian Chesapeake, and nonpayment of the amount due from Mr. Beyman under the terms of his Guaranty. Because Mr. Beyman's interpretation of the Letter Agreement is unenforceable under Virginia law, the Guaranty was not subsequently modified. Therefore, Coveside's Motion for Summary Judgment is **GRANTED**.

## IV. CONCLUSION

Coveside's Motion for Summary Judgment, ECF No. 24, is **GRANTED** as to Coveside's request for damages. It is **ORDERED** that judgment is entered in favor of Plaintiff Comm 2006-C8 Coveside Lane, LLC and against Defendant Ezra Beyman in the amount of $13,500,000.00, plus prejudgment interest on that amount at the statutory rate of nine percent per annum from the date of foreclosure until judgment is entered, and attorney's fees in an amount to be determined after appropriate briefing by the parties.

The parties are encouraged to confer and determine the amount of the final Judgment award. If they are unable to do so, Coveside shall file a motion and supporting memorandum on this issue no later than September 27, 2013. Responsive briefing shall be filed by October 11, 2013, and reply briefing shall be filed by October 18, 2013.

**IT IS SO ORDERED.**

Arenda L. Wright Allen
United States District Judge

August 23, 2013
Norfolk, Virginia

10